**In re Thomas A. TANSKI and Tammy L. Tanski, Debtors.**

**Thomas A. TANSKI and Tammy L. Tanski, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 95–22866–JES.
Adv. No. 95–2342.**

United States Bankruptcy Court,
E.D. Wisconsin.

March 19, 1996.

---

Michael J. Bennett, Lichtsinn & Haensel, S.C., Milwaukee, WI, for Debtors.

Susan M. Knepel, Assistant United States Attorney, Milwaukee, WI, for Defendant.

Thomas J. King, Chapter 13 Trustee, Oshkosh, WI.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The issue presented is whether the dischargeability of Dr. Thomas Tanski's Health Education Assistance Loans ("HEAL") in his most recent chapter 7 bankruptcy case is controlled by Title 42 (Public Health Service Act) or by Title 11 (United States Bankruptcy Code) §§ 523(a)(8) and 523(b).[1]

Cross motions for summary judgment have been presented together with a stipulation of facts and well-prepared briefs.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Debtor–Thomas Tanski received his license to practice dentistry in Wisconsin in 1982. Before then, while in dental school, he obtained the following HEAL loans:

1. $3,000 from Continental Illinois Bank on August 29, 1979 and

2. $10,000 from State of Wisconsin Higher Education Board on March 10, 1980.

---

1. § 523. **Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

(8) for an education benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

---

(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

After Dr. Tanski defaulted in the repayment of these loans, the United States of America, Department of Health and Human Services, HEAL Branch ("USA"), as guarantor on the loans, paid the lenders the outstanding loan balances and obtained an assignment of the lenders' rights, pursuant to 42 U.S.C. § 292 *et seq.* and 42 C.F.R. Pt. 60 *et seq.*

Thereafter, Dr. Tanski filed the following series of bankruptcy cases:

| DATE | NATURE OF PROCEEDING |
|------|----------------------|
| August 3, 1987 | A chapter 7 petition was filed by debtor-Thomas Tanski (Case No. 87–03464). A discharge was granted to him on February 22, 1988. |
| April 15, 1993 | A chapter 7 petition was filed by debtors-Thomas and Tammy Tanski (Case No. 93–22089), which petition was thereafter dismissed upon debtors' request.[2] |
| April 29, 1994 | A chapter 7 petition was filed by debtors-Thomas and Tammy Tanski (Case No. 94–22183). A discharge was granted to them on August 8, 1994. |
| May 9, 1995 | The herein chapter 13 petition was filed by debtors-Thomas and Tammy Tanski (Case No. 95–22866). |

At the time of the filing of the herein chapter 13 petition, the unpaid balance due on the HEAL loans, including principal and interest, totalled $15,279.41.

In order to obtain a full understanding of the issue involved, a brief history of the legislation regulating HEAL loans is fundamental. The Public Health Services Act, which is codified in Title 42, § 201 et seq., was originally passed in 1944. Ch. 373, Title I, § 2, 58 Stat. 682. In 1976, § 733 (which pertains to HEAL loans) was added to the Public Health Services Act and was codified as 42 U.S.C. § 294f. Health Professions Educational Assistance Act, § 401, 1976 U.S.Code Cong. & Ad.News (90 Stat.) 2243, 2262. Subsection (g) of § 294f provided that HEAL loans under § 294f shall be dischargeable in bankruptcy upon the expiration of five years. In 1978, § 733(g) (42 U.S.C. § 294f) was repealed as part of the Bankruptcy Reform Act of 1978. Bankruptcy Re-

form Act, § 327, 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2549, 2679. In 1981, § 733(g) was amended as part of the Omnibus Budget Reconciliation Act of 1981 to provide that HEAL loans shall be dischargeable in bankruptcy only if all of the following requirements are met:

1. Expiration of five years,

2. Unconscionability, and

3. Non-waiver by the Secretary of Health and Human Services of certain rights.

Omnibus Budget Reconciliation Act, § 2730, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 357, 919. In 1992, § 294f(g) was renumbered as § 292f(g) as part of the Health Professions Education Extension Amendments of 1992. Health Professions Education Extension Amendments, § 102, 1992 U.S.Code Cong. & Ad.News (106 Stat.) 1992, 2003. In 1993, the National Institutes of Health Revitalization Act of 1993 increased from five years to seven years the expiration period required for discharge. National Institutes of Health Revitalization Act, § 2014, 1993 U.S.Code Cong. & Ad.News (107 Stat.) 122, 215. To avoid any confusion in this decision, whenever references are made to § 733(g), § 294f(g), or § 292f(g), these sections shall also apply to and be fully interchangeable with each other unless otherwise specifically so noted.

█ The debtors' assert that although these HEAL loans were nondischargeable debts in Dr. Tanski's first bankruptcy in 1987, they became dischargeable upon Dr. Tanski receiving a discharge in his subsequent 1994 bankruptcy case.

In support of this argument, the debtors contend that the language of § 523(b) is clear. Section 523(b) provides that "a debt that was excepted from discharge under ... section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title ... is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is non-

---

**2.** After this petition was filed, the debtors realized that, because Dr. Tanski had previously filed a bankruptcy case and received a discharge less than six years earlier, he would be unable to obtain a discharge in this case. *See* 11 U.S.C. § 727(a)(8).

dischargeable." [3] Debtors reason that, in a subsequent bankruptcy case, § 523(a)(8), not 42 U.S.C. § 292f(g), determines the dischargeability of the HEAL loans. Because the HEAL loans were more than seven years old when Dr. Tanski's 1994 chapter 7 bankruptcy petition was filed, it is debtors' position that such loans were discharged. The debtors acknowledge that HEAL loans under Title 42 are presently more difficult to discharge because of certain requirements in addition to the expiration of time for their dischargeability (i.e., unconscionability and non-waiver by the Secretary of Health and Human Services of certain set-off rights). Nonetheless, the debtors argue that § 523(b) is controlling in the instant case and that Congress has made no change in its wording to remove HEAL loans from the umbrella of debts which are discharged in a later bankruptcy case.

USA, on the other hand, argues that dischargeability of HEAL loans is not governed by §§ 523(a)(8) and 523(b) of the Bankruptcy Code in a first or any subsequent bankruptcy case, but is at all times controlled solely by Title 42.

 The court is mindful that Congress has tightened up on the ability to discharge HEAL loans. However, this court also is cognizant of the well-established principle of statutory construction that the plain language of a statute is ordinarily regarded as conclusive. This rule was emphasized by the United States Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), as follows:

> [W]here, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."

3. Section 733(g) (42 U.S.C. § 294f(g)), the current law regarding HEAL loans, reads as follows:
(g) Conditions for discharge of debt in bankruptcy
A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11 only if such discharge is granted—
(1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of

*(quoting Caminetti v. U.S.,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). *See also Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *Patterson v. Shumate,* 504 U.S. 753, 761–64, 112 S.Ct. 2242, 2248–51, 119 L.Ed.2d 519 (1992); *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas,* 502 U.S. 151, 156, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991). *See also Newsom v. Friedman,* 76 F.3d 813 (7th Cir.1996):

> A court's first obligation when construing the meaning of a law enacted by Congress is to consider the statutory language itself.

and *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734 (7th Cir.1991) *(quoting NuPulse, Inc. v. Schlueter Co.,* 853 F.2d 545, 548 (7th Cir.1988))* ("As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent.")

Section 523(b) is clear and its meaning is plain. It unequivocally declares that HEAL loans under § 733(g) of the Public Health Services Act, if excepted from discharge in a prior bankruptcy, are discharged in a subsequent bankruptcy, provided they meet the dischargeability requirements under §§ 523(a)(8)(A) or (B). In the case at bar, Dr. Tanski's HEAL loans were more than seven years old when his subsequent 1994 chapter 7 bankruptcy petition was filed; therefore, they were discharged under § 523(a)(8)(A).

USA argues that § 523(b) does not apply because § 294f(g) was repealed in 1978. That argument is rejected. A review of the HEAL loan legislative history reveals that § 294f(g) was re-enacted as part of the Omnibus Budget Reconciliation Act of 1981 and specifically provided (under defaults) as follows:

> any period after such date in which the obligation to pay installments on the loan is suspended;
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

Section 2730. Section 733(g) 42 U.S.C. § 294f(g) is *amended* (emphasis added) to read as follows:....

1981 U.S.Code Cong. & Ad.News (95 Stat.) 357, 919.

Nothing in the legislative history of either the Public Health Services Act or the Bankruptcy Code suggests that Congress intended § 733(g) be removed from, and no longer subject to, the consequences of § 523(b) where a debtor has filed a previous bankruptcy. Indeed, the Bankruptcy Reform Act of 1994 made certain technical corrections. These included one change in § 523(b) striking the reference to 42 U.S.C. § 294f as redundant. However, the reference to § 733(g) was left intact.

USA's reliance upon *In re Johnson,* 787 F.2d 1179 (7th Cir.1986), is also misplaced. *Johnson* involved a first-time bankruptcy filing and dealt with the interplay between §§ 294f(g) and 1328(a), not between §§ 294f(g) and 523(b).

 It is the task of this court to apply the law as written, not to rewrite it upon speculation that Congress may have neglected to amend it in a manner consistent with its current policy on HEAL loans. *See In re Bundles,* 856 F.2d 815, 823 (7th Cir.1988); *In re Kasson Inc., U.S.A.,* 109 B.R. 352 (Bankr. E.D.Wis.1989).

This is not one of those rare cases where a literal interpretation of the law will lead to an absurd result. Recently, the court in *In re Conner Home Sales Corp.,* 190 B.R. 255, 260 (E.D.N.C.1995) (*quoting* Justice Thomas in *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)), declared:

> In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."

This court cannot ignore the plain wording of § 523(b). To do so would be contrary to the oft-repeated mandate of the United States Supreme Court and the Seventh Circuit Court of Appeals that a court should give effect to a statute's plain meaning. If the dischargeability of HEAL loans is to be exclusively controlled by 42 U.S.C. § 292f(g) in the first and all subsequent bankruptcy filings, this change in law must emanate from Congress, not from this court.

The debtors' motion for summary judgment is granted, and USA's motion for summary judgment is denied.